OLIVER CROSBY *vs.* S. W. FARMER.

November 2, 1888.

**Summons—Impeachment of Officer's Return.**—The return of an officer of the service of a summons is not conclusive upon the defendant, but may be impeached by affidavit, upon motion or other direct proceedings in the action to set aside the judgment on default.

Appeal by plaintiff from an order of the municipal court of St. Paul, setting aside a judgment by default.

*S. P. Crosby*, for appellant.

*A. C. Hickman*, for respondent.

MITCHELL, J. Judgment by default was rendered against defendant in the municipal court of St. Paul, upon the return of a police officer that he had served the summons upon defendant in the city of St. Paul, Ramsey county, by leaving a copy at his last usual abode, with a person of suitable age and discretion then resident therein. Subsequently the judgment was vacated, on motion of defendant made on affidavits showing that he was not and never had been a resident of Ramsey county, but at the time of the alleged service was and ever since has been a resident of Steele county. The plaintiff presented no counter-affidavits, but relied on the conclusiveness of the officer's return, — contending that it could not be impeached; that, if false, defendant's only remedy was by action against the officer.

v.39m—20

This question has never been squarely decided by this court,—at least as to a return on original process. In *Castner* v. *Symonds*, 1 Minn. 310, (427,) in which the question arose as to the conclusiveness of a sheriff's return on an execution, the court, without filing any opinion, affirmed the decree of the district judge, who had held that if the rights of third parties, who had purchased in good faith in reliance on the judiciál records, were involved, the return should be held conclusive, but that in other cases it could be impeached. In *Tullis* v. *Brawley*, 3 Minn. 191, (277,) the question was the sufficiency *on its face* of a return on an execution to show a levy and sale. No attempt was made to impeach or contradict the return, and hence all that is said in regard to its conclusiveness is mere *obiter*. In *Frasier* v. *Williams*, 15 Minn. 219, (288,) the motion was, not to set aside the return on the summons, but to open an alleged default, and allow defendant to answer. One of the issues on the motion was whether the defendant was in fact in default when he tendered his answer, and this involved the question as to whether the sheriff's return correctly stated the date of service; and on this the court below received affidavits and counter-affidavits, and denied the motion. Counsel for respondents seem neither to have argued nor raised the question of the conclusiveness of the return; their contention being merely that their counter-affidavits showed that the return was correct, and, the defendant being in default, there was no abuse of discretion in refusing to allow him to defend. This court, after stating the fact that counter-affidavits were presented in support of the correctness of the return, says that there was nothing in the case which would justify them in going behind the return of the sheriff as to the time of service. This was decisive of the case upon the very and only ground made by the respondent. But, after so deciding, the court proceeded, unnecessarily, to cite approvingly the *dictum* in *Tullis* v. *Brawley, supra,* to the effect that the return was conclusive. Assuming that this was a decision, and not mere *obiter*, it is, as applied to the case then before the court, (an application to set aside an alleged default, and for leave to answer,) virtually overruled in *Jensen* v. *Crevier*, 33 Minn. 372, (23 N. W. Rep. 541.) In *Hutchins* v. *County of Carver*, 16 Minn. 1, (13,) the court below, on

motion of the execution creditor, who had bid in the judgment debt-or's property, set aside the sheriff's return and the sale on the execution, and granted an *alias* execution, on the ground that there had been no valid sale, but of which the judgment debtor made no complaint. This court held the return sufficient on its face, and, on the authority of *Frasier* v. *Williams, supra,* that it was conclusive between the parties, and therefore the order of the court below was unnecessary, and, being prejudicial to the judgment debtor, was for that reason erroneous. In *Jensen* v. *Crevier, supra,* the correctness of the rule stated in *Frasier* v. *Williams,* as applied to a direct proceeding to vacate the proceedings, was doubted, but not decided.

These are, so far as we know, the only cases in which the question has ever been in any way considered by this court. The rule of the English common law is that, as between the parties to the process or their privies, a sheriff's return is conclusive, and that the court will not try the truth of it on motion to set aside the proceedings, or allow any averment against it to be taken in pleading; that, if false, the only remedy is against the sheriff by action. Com. Dig. tit. "Re-torn" F 2 and G. The reason usually given for the rule is that it is necessary to secure the rights of parties, and give validity and effect to the acts of ministerial officers. In England, process could only be served by the sheriff, who was the only ministerial officer known to the courts for that purpose. Moreover, under the common-law practice which obtained there, it was almost impossible for judgment to be rendered against a party without actual personal notice to him. Under such a system, the rule might be convenient, and without much danger of working injustice.

But, under the practice which obtains in this and other states, most of the old safeguards have been removed; and the necessity for modifying the rule, and adapting it to the changed condition of the law, has been often felt and frequently acted upon, especially in the case of *original* process by which the court acquires jurisdiction. In the district court a summons may be served by any person not a party to the action, and his affidavit of service is placed virtually on the same footing as the return of a sheriff. In the municipal court of St. Paul the summons may be served by any policeman. The remedy by

action for false return, under such a system, would often be inadequate or wholly fruitless. Again, the manner of service has been in other respects so materially changed that actual personal service is unnecessary, and the officer making service must often return as to facts not within his personal knowledge, but in the determination of which he must frequently rely upon information received from others. For example, service may be made by leaving a copy of the summons at the house of defendant's usual abode, with a person of suitable age and discretion then resident therein. In case of corporations service may be made, not only on certain specified general officers, but also, in certain cases, upon a managing or general agent, or even upon an acting ticket or freight agent. In case of minors under 14 years, the service must be both on the minor personally, and also upon his father, mother, or guardian, or, if none, upon the person having the care or control of the minor, or with whom he resides, or by whom he is employed. How can a sheriff determine where a man resides, or who resides with him, or who is the ticket or freight agent of a railway company, or who has the care or control of a minor, or by whom he is employed, except upon information? and why should his return as to these facts be conclusive? If the officer makes a mistake, why should the defendant be compelled to allow the judgment against him to stand, and resort to his suit against the officer, instead of being permitted to apply in a direct proceeding in the action to set aside the false return? We can see no good reason why the plaintiff should have a sum of money to which he is not entitled, and the officer be compelled to pay the defendant a like sum for making what may have been an honest mistake. If somebody must suffer loss for the mistake, it is right that it should fall on him who made it; but, if discovered in time to prevent loss to any one, why should not the mistake be corrected on motion? There are very good reasons why the return of a ministerial officer should be held conclusive in all collateral proceedings, but we can see none, either upon principle or considerations of policy, why it may not be impeached for falsity in direct proceedings in the action; assuming always, of course, that no rights of third parties have intervened. Any evils or inconvenience which can possibly arise from permitting

this to be done would, in our judgment, be greatly outweighed by the injustice that would often result from prohibiting it. The general tendency, especially in states having a code practice like ours, is to allow the return to be impeached by an affidavit, on motion or other direct proceedings to vacate. *Bond* v. *Wilson*, 8 Kan. 228; *Walker* v. *Lutz*, 14 Neb. 274, (15 N. W. Rep. 352;) *Wendell* v. *Mugridge*, 19 N. H. 109; *Carr* v. *Commercial Bank*, 16 Wis. 52; *Stout* v. *Sioux City & Pacific R. Co.*, 3 McCrary, 1, (8 Fed. Rep. 794;) *Van Rensselaer* v. *Chadwick*, 7 How. Pr. 297; *Wallis* v. *Lott*, 15 How. Pr. 567; *Watson* v. *Watson*, 6 Conn. 334; *Rowe* v. *Table Mt. Water Co.*, 10 Cal. 442.

Some of the cases seem to make a distinction between mesne and final process and the original process, like a summons, by which the court acquires jurisdiction of the defendant. We confess that we cannot see at present why there should be any such distinction; but, without deciding that question, we are of opinion that, upon a motion made in the action to vacate a judgment by default on the ground of no service of the summons, the return of the officer may be impeached by affidavits, as was done in this case.

The appellant makes the further point that the municipal court had no longer any jurisdiction over the action, because a transcript of the judgment had been previously issued and filed in the district court. There is nothing in this point. Gen. St. 1878, c. 64, § 96, simply provides that, after filing the transcript, the judgment, so far as relates to the enforcement of the same, shall be exclusively under the control of the district court. It is still the judgment of the municipal court, and for all purposes, except enforcing collection of it, that court has the same control over it which it ever had. It is possessed of all the powers of courts of record at common law, among which is the power to vacate its judgments when improvidently rendered.

Order affirmed.